IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2010

## FREDERICK CAREY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-05894 - 96     W. Mark Ward, Judge**

_____

**No. W2009-01646-CCA-R3-PC  -  Filed June 14, 2010**

_____

The petitioner, Frederick Carey, pled guilty pursuant to a negotiated plea agreement to three counts of the sale of cocaine, Class B felonies, two counts of assault, Class A misdemeanors, and one count of resisting official detention, a Class B misdemeanor. The petitioner agreed to a sentence of ten years in the Tennessee Department of Correction for each Class B felony, to be served concurrently, and to time served for the misdemeanor convictions. On appeal from the post-conviction court's denial of relief, the petitioner argues that he received ineffective assistance of counsel because his trial counsel presented an unenforceable plea agreement upon which he relied in choosing to plead guilty. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Alan E. Glenn and D. Kelly Thomas, Jr., JJ., joined.

Terita M. Hewlett, Memphis, Tennessee, for the appellant, Frederick Carey.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; and William L. Gibbons, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

In July 2007, a Shelby County grand jury indicted the petitioner, Frederick Carey,[1] in case number 07-05894 for the sale of cocaine, possession with intent to sell cocaine, and possession with intent to deliver cocaine, Class B felonies. The grand jury indicted him on identical charges in case numbers 07-05895 and 07-05896. In case number 07-05897, the grand jury indicted him on two counts of assault, Class A misdemeanors, and one count of resisting official detention, a Class B misdemeanor. Pursuant to a negotiated plea agreement, the petitioner pled guilty on May 1, 2008, to three counts of the sale of cocaine and to case number 07-05897 as charged. The state dismissed the six possession counts. The petitioner agreed to serve ten years as a Range I standard offender for each sale of cocaine conviction, to be served concurrently in the Tennessee Department of Correction. He agreed to serve thirty days in the workhouse for each of the misdemeanor convictions, which amounted to time served.

At his plea acceptance hearing, the petitioner stipulated to the following facts presented by the state:

> The facts giv[ing] rise to 07-05897 are on June 1, 2007[,] officers were attempting to locate [the petitioner] who had three outstanding warrants for his arrest. Upon making entry into the home to search the residence to find [the petitioner][,] the officers located him in a southwest bedroom closet under clothing. Officers ordered [the petitioner] to exit the closet, at which time he refused. They were physically removing him from the closet when he began to fight with the officers. During the fight [the petitioner] kicked Officer Gonzales several times and Officer Hinson was struck on the right leg and then Officer Gonzales was struck on the right cheek.

> . . . .

> The facts giving rise to [the] indictment 07-05894 are on May 17, 2007, a confidential informant working with the Shelby County Sheriff's Office Street Crimes Unit did make a narcotics transaction with [the petitioner] in which he exchanged $40.00 with marked narcotics funds for suspected crack cocaine. This occurred in front of 5201 Breckinwood [Drive], here in Shelby County.

> The cocaine that the confidential informant was able to purchase from [the petitioner] did test positive and weighed .7 grams.

---

[1] The petitioner is also known as Frederick Caery.

The facts giving rise to indictment ending in 95, are on [May 18, 2007,] a confidential informant working with the Shelby County Sheriff's Office Narcotics Unit made a phone call to [the petitioner] in regards to purchasing some crack cocaine from him. The confidential informant met with [the petitioner] and gave [him] $40.00 of narcotic funds for the crack cocaine.

[The petitioner] was then picked up by a male white, occupying a white truck. That truck left the scene. [The petitioner] was followed and observed to go into a store at Woodstock-Cuba [Road] and Rust Road. He exited the store, got back in the truck, returned to Breckinwood [Drive], exited the vehicle and handed the confidential informant, approximately, .86 grams of crack cocaine and that substance did test positive.

The facts giving rise to indictment 07-05896 are on May 21, 2007[,] an undercover officer with the Shelby County Sheriff's Office met with [the petitioner] in front of 5201 Breckinwood Drive and advised [the petitioner] that he would like to buy $50.00 worth of crack cocaine.

The undercover officer left the area to get the money. [The petitioner] was observed by the surveillance unit to make a hand to hand transaction with a male black known as Damian Tate.

The undercover officer returned, gave [the petitioner] $50.00 of narcotic funds and was given approximately 1.22 grams of crack cocaine by [the petitioner]. This occurred in Shelby County, Tennessee.

The petitioner requested a community corrections sentence, and the court held a hearing on the matter on May 30, 2008. Following the hearing, the court denied any form of alternative sentencing. On November 5, 2008, the petitioner, *pro se*, filed a petition for writ of error coram nobis, and the court appointed counsel on November 19, 2008. Through counsel, the petitioner filed an amended petition for post-conviction relief on March 11, 2009. The petitioner alleged that he received ineffective assistance of counsel because counsel failed to prepare and investigate his case and that he entered his guilty pleas unknowingly and involuntarily. The post-conviction court held a hearing on July 16, 2009, at which the parties presented the following testimony.

Trial counsel testified that she had worked for the Public Defender's Office for twenty-five years. She took over the petitioner's case when his original attorney was on medical leave. She spoke with the petitioner and suggested that she would try to procure a better offer for him from the state. Counsel said his original offer was for fifteen years.

-3-

Subsequently, the state agreed to ten-year sentences for the three cocaine sale charges, to run concurrently, and to allow the petitioner to apply for probation. She said, "I told [the petitioner] that we would try to see if we could get probation and that based on his record Community Corrections would probably be the only shot he had at it." Counsel testified that she did not guarantee that the petitioner would be placed on community corrections and that she told him it would be "a long shot" because of his record. After discussing the state's plea offer, the petitioner decided to plead guilty. Counsel testified that her normal procedure with clients who are pleading guilty is to "go over the plea agreement paragraph by paragraph and go over the judgment sheet . . . then [she has] them sign it, after they tell [her] they understand everything." Counsel recalled that the petitioner told her that he had received a head injury that caused him to reevaluate his life. She did not believe the injury affected his reasoning ability. Counsel said that the petitioner said that he understood his rights, and she had no reason to doubt him. She testified that the petitioner maintained his innocence, but there was video placing him in the locations of the drug sales, and he was facing a much longer sentence if he went to trial.

On cross-examination, counsel testified that she reviews the state's proof with each of her clients and advises them of the sentencing possibilities. She said that she would not have allowed the petitioner to plead guilty if he did not understand what he was doing. Counsel could not recall whether the petitioner's insistence that he was innocent was an issue regarding his plea acceptance. Counsel said that she knew the petitioner before she began working on his case. She believed that she had represented him in a prior matter.

The petitioner testified that counsel told him the state was offering ten-year sentences and that he would get probation, but she was not sure what kind of probation he would receive. He testified that he signed papers without reading them, believing them to be probation papers. He did not know that he was agreeing to serve ten years. The petitioner said that he would not have accepted the offer if counsel had not promised that he would get probation. He recalled that the trial judge told him, during the plea acceptance hearing, that no one could guarantee that he would receive community corrections. He did not speak up at the time because he "was trying to find out how things were going to work out for [him]" and "was kind of stunned . . . ." When the judge asked him whether he was satisfied with his representation, he replied "huh-uh," meaning that he was not because he was not satisfied with his original attorney and trial counsel had only represented him one day.

On cross-examination, the petitioner admitted that he was familiar with the criminal justice system and that he was normally willing to advocate for his rights, as evidenced by the letters he wrote to his attorney and to the Board of Professional Responsibility. He said that he did not answer the judge as he should have when the judge asked about his understanding that he may or may not receive a community corrections sentence. The

-4-

petitioner claimed that he told the judge that counsel promised that he would receive community corrections, despite the absence of such a comment on the record.

The post-conviction court entered a written order denying relief on July 16, 2009. The court found that the petitioner presented no evidence that counsel failed to prepare and investigate his case and that counsel's testimony that she did not promise the petitioner that he would receive a community corrections sentence was credible . The post-conviction court ruled that the petitioner did not carry his burden of proving his claims. The petitioner filed a timely notice of appeal.

**Analysis**

On appeal, the petitioner contends that he received ineffective assistance of counsel when counsel presented the state's plea agreement, which he claims was unenforceable because he was not eligible to receive a community corrections sentence. The state responds that the petitioner waived his argument by not presenting it in his petition for post-conviction relief nor arguing his claim at the post-conviction hearing. Alternatively, the state argues that counsel provided effective assistance and did not guarantee the petitioner that he would receive a community corrections sentence. We agree with the state's alternative argument.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is bound to the post-conviction court's findings of fact unless the evidence preponderates against those findings. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State,* 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id.*

When determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). *See also State v. Pettus,* 986 S.W.2d 540, 542 (Tenn. 1999). The reviewing court must look to various circumstantial factors, including:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against

him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). In order for a guilty plea to be voluntary, the petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 905. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). *See also Arnold v. State,* 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland,* 466 U.S. at 688. *See also Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. *See also Nichols v. State,* 90 S.W.3d 576, 587 (Tenn. 2002). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State,* 938 S.W.2d 363, 369 (Tenn. 1996). Once the petitioner proves that counsel's representation fell below a reasonable standard, the petitioner must also prove prejudice. *Strickland,* 466 U.S. at 694. In relation to a guilty plea, the petitioner must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Adkins v. State,* 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

Initially, we note that the state contends that the petitioner waived his argument on appeal by not including it in his petition for post-conviction relief nor arguing his claim at the post-conviction hearing. In his petition, the petitioner claims that he

was misled and thereby induced into believing that he was eligible for Community Corrections. However, after the acceptance of the guilty plea, Counsel acknowledged during the sentencing hearing that Petitioner was not

one who would normally be considered for Community Corrections . . . . Had Petitioner known that it was possible he would not be eligible for Community Corrections, he would not have pled guilty but would have insisted on going to trial.

In his appellate brief, the petitioner states that counsel "communicated to [the petitioner] that Community Corrections was a possibility and upon further discussion with [the petitioner], he waived his right to trial and chose to plead guilty." He further states that counsel "owed a duty to [the petitioner] to determine whether the [Community Corrections terms] of the [p]lea could be implemented before rendering advice on whether to accept the plea bargain." While expressed differently on appeal, the argument is sufficiently similar to his petition because he argues in both that he relied on his alleged eligibility to receive a community corrections sentence when he pled guilty. We conclude that the petitioner has not waived his argument.

As for the merits of the petitioner's argument, in our view, the petitioner has not carried his burden of showing a reasonable probability that he would have proceeded to trial but for counsel's error. Counsel's testimony, accredited by the trial court, reveals that she did not promise that he would receive a community corrections sentence. Additionally, the guilty plea hearing transcript demonstrates that the trial court advised the petitioner that no one could guarantee that he would receive community corrections and that the petitioner indicated that he understood. The negotiated plea agreement allowed him to apply for an alternative sentence, and the trial court held a hearing to determine whether to grant alternative sentencing. The trial court denied alternative sentencing, not because the petitioner was statutorily ineligible as the petitioner contends on appeal, but because, in its discretion, the court found that he was not a suitable candidate for any form of alternative sentencing based on his criminal record and history of probation violations. The petitioner has not shown that counsel provided ineffective assistance by inducing him to plead guilty based on an unenforceable plea agreement. Trial counsel made no guarantee that he would receive community corrections and the plea agreement, which he indicated at the time that he understood, merely allowed him to apply for alternative sentencing. We conclude that the petitioner's claim is without merit.

**Conclusion**

Based on the foregoing reasons, we affirm the denial of post-conviction relief.

_____
J.C. McLIN, JUDGE

-7-